1

2

3

4

5

6

7

8

9

10

**United States District Court**
**For the Northern District of California**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

13

14

15

16

MARVELLOUS AMIR WARRIOR,

         Plaintiff,

v.

FERNANDO GONZALEZ ET AL.,

         Defendants.

_____/

No. C 08-00677 CRB

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION TO DISMISS THE THIRD
AMENDED COMPLAINT**

17

18

19

20

21

22

23

    Before the Court is Defendant's Motion to Dismiss Plaintiff's Third Amended
Complaint.  MTD TAC (dkt. 68).  Plaintiff alleges that Defendant's policy of subjecting
Muslim inmates to visual body cavity strip searches before and after religious programming
during the month of Ramadan violated Plaintiff's First, Fourth and Fourteenth Amendment
rights, as well as Plaintiff's rights under the Religious Land Use and Institutionalized Persons
Act ("RLUIPA").  See generally TAC (dkt. 55).  The Court GRANTS in part and DENIES in
part the Motion to Dismiss.

24

## I.    BACKGROUND

25

26

27

28

    Marvellous Warrior ("Plaintiff"), a California state prisoner, sued various state prison
officials under 42 U.S.C. § 1983, alleging violations of his constitutional rights stemming
from strip searches conducted at the California Correctional Institution ("CCI").  See generally
Compl. (dkt. 1).  The Court dismissed Plaintiff's initial complaint pursuant to

28 U.S.C. § 1915(a), concluding that Plaintiff did not state a claim because he did not allege facts suggesting that the strip searches were unreasonable. Dkt. 18.

Plaintiff moved to vacate the Court's judgment and the Court denied Plaintiff's motion. Dkt. 23. Plaintiff timely appealed, and the Ninth Circuit Court of Appeals vacated and remanded, instructing this Court to provide Plaintiff with leave to file a second amended complaint. Memorandum (dkt. 28). The Ninth Circuit highlighted Plaintiff's claim "that Muslim inmates at CCI were singled out for strip searches, whereas inmates of other religions were not." Id. at 2.

On remand, Plaintiff filed a Second Amended Complaint. See generally SAC (dkt. 35). The named defendants requested that the Court again evaluate and dismiss the SAC under 28 U.S.C. § 1915(a). See dkt. 48. The Court denied defendants request, allowed Plaintiff's claim regarding the strip searching of Muslim inmates to proceed, and found good cause to appoint Plaintiff counsel. See dkt. 49. Following Plaintiff's appointment of counsel, the Court granted Plaintiff leave to file a Third Amended Complaint (TAC). Id.

Under the guidance of counsel, Plaintiff filed the TAC which now alleges new claims and added Warden Fernando Gonzalez ("Defendant") as a defendant. Dkt. 55. Specifically, the TAC alleges that Defendant's policy of subjecting Muslim inmates to visual body cavity searches before and after religious programming during the month of Ramadan violated Plaintiff's rights under the RLUIPA, as well as Plaintiff's rights under the First, Fourth and Fourteenth Amendments. See generally TAC. Defendant filed a third request for screening and dismissal of the TAC under 28 U.S.C. § 1915(a). Dkt. 57. The Court denied Defendant's request noting that "further § 1915A review would not result in the dismissal of any claims." Dkt. 61. Defendant Gonzalez now moves to dismiss all claims pursuant to Federal Rules of Civil Procedure 12(b)(6). See generally MTD TAC.

## II.   LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Dismissal is proper if a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P.

12(b)(6).  To survive dismissal, a complaint must contain factual allegations sufficient to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  When determining plausibility, the Court accepts allegations pertaining to material facts as true for purposes of the motion and construes the allegations in the light most favorable to the non-moving party.  Wyler-Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998).  If dismissal is ordered, complainants should be granted leave to amend unless it is clear that the claims could not be saved by amendment.  Swartz v. KPMG LLP, 476 F.3d 756, 760 (9th Cir. 2007).

## III.   DISCUSSION

Defendant moves to dismiss the SAC on the grounds that (1) Defendant is not liable in his individual capacity for money damages under the RLUIPA; (2) Defendant is not liable under 42 U.S.C. § 1983 for the alleged constitutional violations because he acted as a supervisor; (3) Defendant's strip search policy did not violate Plaintiff's Fourth Amendment rights because it was reasonably related to legitimate penological interests; (4) Defendant's strip search policy did not violate Plaintiff's First Amendment right to Free Exercise of religion because it was implemented for a legitimate penological purpose; (5) Defendant's strip search policy did not violate Plaintiff's rights under the First Amendment's Establishment Clause because Defendant did not sponsor, support or become involved in Defendant's religious exercise; (6) Plaintiff fails to state a Fourteenth Amendment equal protection claim because Plaintiff does not allege that Defendant personally participated in the acts resulting in the constitutional violation; and (7) Defendant is entitled to qualified immunity on all claims.  The Court addresses Defendant's arguments in turn.

### A.   Defendant's Liability Under The RLUIPA

Defendant contends that Plaintiff fails to state a valid claim under the RLUIPA because Plaintiff is suing Defendant in his individual capacity and seeks only money damages.  Defendant argues that money damages are not available under such a claim.

Despite a lack of Ninth Circuit authority on point, the Court finds Defendant's argument persuasive.

The Ninth Circuit has not specifically addressed the issue of whether money damages are available against officials sued in their individual capacity under the RLUIPA.  See Schilling v. Crawford, 377 Fed. Appx. 702, 705 (9th Cir. 2010) ("This court has not yet decided whether money damages for RLUIPA claims are available against state actors sued in their individual capacities.").  However, Courts of Appeal for the Second, Fourth, Fifth, Seventh, Tenth and Eleventh Circuits have resolved the question in the negative.  See Washington v. Gonyea, 731 F.3d 143, 145 (2nd Cir. 2013); Rendelman v. Rouse, 569 F.3d 182, 187-88 (4th Cir. 2009);  Sossamon v. Texas, 560 F.3d 316, 327-29 (5th Cir. 2009) *affirmed by* Sossaman v. Texas, 131 S. Ct. 1651 (2011); Nelson v. Miller, 570 F.3d 868, 885–89 (7th Cir. 2009); Stewart v. Beach, 701 F.3d 1322, 1334 (10th Cir. 2012); Smith v. Allen, 502 F.3d 1255, 1272-73 (11th Cir. 2007) *abrogated on other grounds by* Sossaman, 131 S. Ct. at 1657.  These Circuit Courts concluded that Congress enacted the RLUIPA pursuant to the Spending Clause, and as such, Congress had an obligation to indicate with sufficient clarity an intent to condition the states' receipt of federal funds on the creation of an individual capacity action for damages.  See, e.g., Rendelman, 569 F.3d at 188-89.  The Circuits reasoned that, by defining government under the RLUIPA to vaguely include a "person acting under color of state law," Congress did not fulfill its obligation of signaling with sufficient clarity the intent to subject such a person to individual capacity damages. See, e.g., id.  Although the Ninth Circuit has not addressed the issue specifically, the Ninth Circuit has upheld the constitutionality of RLUIPA as an enactment under the Spending Clause.  See Mayweathers v. Newland, 314 F.3d 1062, 1066–67 (9th Cir. 2002).

Accordingly, the Court is persuaded that Plaintiff cannot assert an RLUIPA claim for damages against Defendant in his individual capacity.  In finding as much, the Court joins other district courts in this Circuit that have come to the same conclusion.  See, e.g., Rupe v. Cate, 688 F. Supp. 2d 1035, 1046 (E.D. Cal. 2010); Harris v. Schriro, 652 F. Supp. 2d 1024, 1030 (D. Ariz. 2009); Furnace v. Giurbino, No. 1:11–cv–00012–LJO–DLB PC, 2013 WL

4

1  2190086, at *4 (E.D. Cal. May 20, 2013); <u>Hypolite v. CDCR</u>, No. 2:05–cv–0428, 2010 WL

2  1729736, at *5 (E.D. Cal. Apr. 28, 2010); <u>Sokolsky v. Voss</u>, No. 1:07–CV–00594–SMM,

3  2010 WL 2991522, at *4 (E.D. Cal. July 28, 2010).  Because Plaintiff sues Defendant in his

4  individual capacity, Defendant's motion with regard to the RLUIPA claim is granted.

5         **B.     Supervisory Liability Under 42 U.S.C. § 1983**

6         Defendant argues that Plaintiff's § 1983 claims should be dismissed because Plaintiff

7  does not plead facts sufficient to connect Defendant, the supervising Warden at CCI, to the

8  actions that resulted in the alleged deprivation of Plaintiff's constitutional rights.  Plaintiff

9  contends that the TAC sufficiently alleges facts suggesting that Defendant is responsible for

10  the strip-searching policy, and that the policy itself led to the deprivation of Plaintiff's rights.

11  Accepting the allegations as true and viewing them in a light most favorable to Plaintiff, the

12  Court finds Plaintiff's argument persuasive.

13         "A defendant may be held liable as a supervisor under § 1983 if there exists either (1)

14  his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal

15  connection between the supervisor's wrongful conduct and the constitutional violation." <u>Starr</u>

16  <u>v. Baca</u>, 652 F.3d 1202, 1207 (9th Cir. 2011) (quotations omitted).  A causal connection

17  exists "even without overt personal participation in the offensive act if supervisory officials

18  implement a policy so deficient that the policy itself is a repudiation of constitutional rights

19  and is the moving force of the constitutional violation."  <u>Redmond v. Cnty of San Deigo</u>, 942

20  F.2d 1435, 1447 (9th Cir. 1991) (en banc) (quotations omitted), *abrogated in part on other*

21  *grounds by* <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994).  When such a causal connection is

22  established, supervisor liability is not vicarious, but is direct to the prisoner who suffered as a

23  result of the deficient policy.  <u>Id.</u>

24         In <u>Redmond</u>, the plaintiff brought suit under 42 U.S.C. § 1983 against the San Diego

25  County Sheriff, alleging that overcrowding in a San Diego County detention facility resulted

26  in increased safety concerns and ultimately led to Plaintiff suffering a sexual assault.  <u>Id.</u> at

27  1447.  On the Sheriff's motion for summary judgement, the court found that, by virtue of his

28  supervisory position, a reasonable jury could find "that he acquiesced in a deficient policy

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   that was a moving force behind Redman's rape and that repudiated Redman's constitutional

2   right to personal security." Id. Despite no evidence that the Sheriff was personally involved

3   in the sexual assault, and no evidence that the Sheriff instituted a specific policy that led to

4   the assault, the court found a triable issue with regard to the Sheriff's liability by virtue of his

5   position as supervisor of the facility. Id.

6        Here, like in Redmond, Plaintiff sufficiently alleges that Defendant, through his

7   supervisory position at CCI, is responsible for the policy of strip searching Muslim inmates

8   during the month of Ramadan that allegedly resulted in the deprivation of Plaintiff's rights.

9   In the TAC, Plaintiff alleges that Defendant was the acting warden at CCI during the month

10   of Ramadan in 2007. TAC ¶ 5. Plaintiff alleges that Defendant, as acting warden, "was

11   ultimately responsible for the policies and practices under which the searches occurred."[1] Id.

12   Throughout the TAC, Plaintiff consistently alleges that it was the search policy that led to his

13   claimed constitutional violations. See ¶¶ 21, 22, 25, 29, 34, 37. Moreover, Plaintiff alleges

14   that no such policy was applied to members of other religious groups attending similar

15   religious programming or to members of the general population traveling in the same area of

16   the prison, and that no such policy was applied at other California prison facilities supervised

17   by other wardens. See ¶¶ 15-18.

18        Given the standard at the motion to dismiss stage, Plaintiff has sufficiently alleged

19   that Defendant was responsible for the strip search policy, that the policy was only applied to

20   Muslim inmates attending Ramadan programming, and that the violations that Plaintiff

21   allegedly suffered stemmed from the application of Defendant's policy. Accordingly, with

22   respect to Defendant's argument that he is not liable under 42 U.S.C. § 1983 in his

23   supervisory capacity, Defendant's motion is denied.

---

27   [1] Plaintiff is correct. Under Title 15, section 3380(a) of the California Code of Regulations,
28   "[t]he warden or superintendent of an institution of the department is the chief executive officer of that institution, and is responsible for the custody, treatment, training and discipline of all inmates under his or her charge."

**United States District Court**
**For the Northern District of California**

### C.     Fourth Amendment Claim

Defendant argues that Plaintiff fails to state a valid claim alleging violations of his Fourth Amendment rights.  Defendant contends that the alleged strip-search policy was reasonable given the manner in which the searches were conducted, the justification for the policy, and the fact that substantial deference is owed to prison officials when courts evaluate prison policy.  However, when reasonable inferences are drawn in favor of Plaintiff, the allegations set forth in the TAC are sufficient, and Defendant's argument fails.

Fourth Amendment protections extend to incarcerated prisoners.  Bell v. Wolfish, 441 U.S. 520, 558 (1979).  However, because of the unique concerns at play in a prison, "the reasonableness of a particular search [upon a prisoner] is determined by reference to the prison context."  Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988).  In evaluating the reasonableness of a search within a prison, courts must consider "(1) the scope of the particular intrusion, (2) the manner in which [the search] is conducted, (3) the justification for initiating [the search], and (4) the place in which [the search] is conducted."  Byrd v. Maricopa Cnty. Sheriff's Dep't, 629 F.3d 1135, 1141 (9th Cir. 2011) (citing Bell, 441 U.S. at 559) (quotations omitted).

In considering the reasonableness of a given search practice, the court applies an objective analysis.  Nunez v. Duncan, 591 F.3d 1217, 1228 (9th Cir. 2010).  Specifically, "[a]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify [the] action."  Id. (quoting  Brigham City, Utah v. Stuart, 547 U.S. 398, 404 (2006)) (quotations omitted).

When viewed in a light most favorable to the Plaintiff, the defendant's alleged search policy was unreasonable.  "[E]ven when conducted with all due courtesy," strip searches are "indisputably a frightening and humiliating invasion," the intrusiveness of which "cannot be overstated."  Way v. Cnty of Ventura, 445 F.3d 1157, 1160 (9th Cir. 2006) (quotations and citations omitted).  See also Thompson v. City of L.A., 885 F.2d 1439, 1446 (9th Cir.1989) ("The feelings of humiliation and degradation associated with forcibly exposing one's nude body to strangers for visual inspection is beyond dispute.") *overruled on other grounds by*

United States District Court
For the Northern District of California

1    Bull v. City and Cnty of S.F., 595 F.3d 964 (9th Cir. 2010).  Moreover, the intrusiveness of a

2    strip search is enhanced when

3    viewed by other inmates, and especially when viewed by opposite sex prison personnel.

4    Byrd, 629 F.3d at 1141 ("[T]he desire to shield one's unclothed figure from [the] view of

5    strangers, and particularly strangers of the opposite sex, is impelled by elementary

6    self-respect and personal dignity.").

7            Here, Plaintiff alleges that he was subjected to a visual body cavity strip search twice

8    each evening for the thirty nights of Ramadan.  TAC ¶¶ 11-13.  Plaintiff alleges that two or

9    more guards strip searched him in his cell prior to his attending religious programming in the

10   chow hall, and then strip searched him again in the chow hall after the religious programming

11   and before he returned to his cell.  Id.  The searches allegedly consisted of Plaintiff removing

12   his clothes, opening his mouth for inspection, and bending over and spreading his buttocks

13   for visual inspection of his rectum.  TAC ¶¶ 12-13.  The searches in the chow hall allegedly

14   occurred in front of other inmates; and moreover, Plaintiff alleges that female correctional

15   officers regularly observed the searches.  TAC ¶ 13.  Accordingly, the intrusiveness of the

16   alleged searches weighs in favor of a finding of unreasonableness barring legitimate

17   justification for instituting the search policy.

18          Because the alleged strip search practices carried out pursuant to Defendant's policy

19   were highly intrusive, the policy can only be deemed reasonable if sufficient justification for

20   initiating the policy exists.  See, e.g., Byrd, 629 F.3d at 1143.  Although substantial deference

21   is owed to prison officials in determinations regarding prison safety, at the motion to dismiss

22   stage, Plaintiff has successfully alleged that the intrusive searches were unjustified.  Because

23   no evidence exists at the motion to dismiss stage that would demonstrate Defendant's

24   justification for the policy, only "common-sense" justifications are considered by the Court.

25   Whitmore v. Arizona, 298 F.3d 1134, 1136 (9th Cir. 2002).  Defendant's motion offers the

26   common-sense justifications for the search policy of "controlling contraband and ensuring

27   safety within the prison."  MTD SAC at 8.

28

United States District Court
For the Northern District of California

Despite the facial reasonableness of Defendant's claimed justifications, the alleged inconsistency of the search policy undercuts Defendant's argument.  First, Plaintiff alleges that members of other religious groups are not subject to the same search policy when they attend comparable religious programming.  TAC ¶ 15.  Second, Plaintiff alleges that inmates are not routinely subject to visual body cavity search when they move between the area containing inmate cells and the chow hall–the area where the relevant Ramadan programming was conducted.  TAC ¶ 18.  And third, Plaintiff directs the Court to Title 15, Section 3283 of the California Code of Regulations, which authorizes the strip searching of inmates when they move into or out of "high risk security areas."  Id. ¶ 17.  Plaintiff alleges that neither the Chow Hall nor the area containing inmate cells are designated high risk security areas.  Id.  Were the search policy actually justified by broad safety concerns, there would be no rational justification for singling out and only applying the policy to Muslim inmates attending Ramadan programming.  At least at this stage in the proceedings where no evidence exists to explain the policy's seemingly arbitrary application to Muslim inmates, considered objectively, the intrusiveness of the policy is not justified by common-sense penological interests.  Accordingly, Defendant's motion is denied as to Plaintiff's Fourth Amendment claim.

### D.      Free Exercise Claim

Defendant argues that Plaintiff fails to state a valid claim alleging a violation of his First Amendment right to free exercise of religion.  Defendant argues that the strip search policy did not prevent Plaintiff from attending religious programming, that the policy was carried out in a reasonable manner, and to the extent Plaintiff was burdened by the policy, the burden was justified by legitimate penological interests.  Defendant's arguments are unpersuasive.

"The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment, prohibits government from making a law prohibiting the free exercise [of religion]." Hartmann v. CDCR, 707 F.3d 1114, 1122 (9th Cir. 2013) (per curiam) (citation and quotations omitted) (alterations in original).  Despite limitations on

9

**United States District Court**
For the Northern District of California

inmates' constitutional rights, they "retain the protections afforded by the First Amendment, 'including its directive that no law shall prohibit the free exercise of religion.'" <u>Shakur v. Schriro</u>, 514 F.3d 878, 883-84 (9th Cir. 2008) (quoting <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348 (1987)).  "To prevail on [a] Free Exercise claim, [plaintiffs] must allege facts plausibly showing that the government denied them 'a reasonable opportunity of pursuing [their] faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" <u>Hartmann</u>, 707 F.3d at 1122 (quoting <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972)).  To reach the level of a constitutional violation, "the interference . . . must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." <u>Freeman v. Arpaio</u>, 125 F.3d 732, 737 (9th Cir. 1997), *overruled on other grounds by* <u>Shakur</u>, 514 F.3d at 884-85.  The burdened religious practices need not be mandatory under the plaintiff's religion; instead, the plaintiff must simply allege a sincere belief that the restricted practice is consistent with his faith. <u>Shakur</u>, 514 F.3d at 885.

Here, Plaintiff sufficiently alleges that the government has substantially burdened his reasonable opportunity to pursue his faith as compared to CCI inmates practicing other religions.  Plaintiff alleges that he is a Muslim and that his faith requires him to fast from sunup to sundown during the month of Ramadan.  TAC ¶ 10.  Each night during Ramadan, Plaintiff and other Muslim inmates met to discuss religious teachings and break their religious mandated fast with a meal.  <u>Id.</u>  As a condition of attending the Ramadan programming, Plaintiff alleges that he was required to submit to a visual body cavity search before leaving his cell and again upon the conclusion of the Ramadan programming. <u>Id.</u> ¶ 11.  Visual body cavity searches are highly intrusive practices that entail a "frightening and humiliating invasion" of prisoner privacy.  <u>Way</u>, 445 F.3d at 1160.  Plaintiff alleges that Catholic and Jewish inmates at CCI were not subjected to visual body cavity strip searches before and after comparable religious programming.  TAC ¶ 15.

In sum, Plaintiff alleges that he holds a sincere belief that his religion requires him to fast from sunup to sundown during the month of Ramadan and to take part in Ramadan

United States District Court
For the Northern District of California

related religious activities.  Plaintiff alleges that Defendant's policy of strip-searching all Muslim inmates as a condition of attending Ramadan programming amounted to a substantial burden and interfered with the reasonable opportunity to fulfill his religious obligations. Finally, Plaintiff alleges that the unreasonableness of this burden is demonstrated by CCI's failure to impose a similar burden on the free exercise of other religions.  Therefore, construing the TAC generously and in a light most favorable to the non-moving party, Defendant's motion is denied as to Plaintiff's claim under the First Amendment.

Despite Plaintiff's allegations, Defendant argues that there are legitimate penological interests that justify the strip search policy, and therefore, Plaintiff's claim should still be dismissed under the test set forth in Turner v. Safely, 482 U.S. 78, 89 (1987).  The Turner test weighs the restriction on an inmate's constitutional rights against the government's justification for the allegedly restrictive practice.  Id.  A dismissal on the pleadings under Turner, where a defendant has set forth no evidence establishing a justification for the restrictive practice, "is appropriate only when a common-sense connection exists between the prison regulation and the asserted, legitimate governmental interest."  Whitmore, 298 F.3d at 1136.

Here, drawing all reasonable inferences in Plaintiff's favor, there are no common-sense penological interests that outweigh Plaintiff's alleged burden.  Defendant's motion cites preservation of prison safety as a legitimate interest justifying the searches, but as with Plaintiff's Fourth Amendment claim, Plaintiff alleges facts that undermine Defendant's argument.  Plaintiff alleges that non-muslim inmates attending comparable religious programming were not subject to the policy, that other inmates traveling in the same area of the prison were not subject to the policy, and that the relevant areas between the inmate cells and the chow hall are not designated high risk areas where strip searching normally occurs. TAC ¶¶ 15-18.  Because there is no evidence to establish a specific justification for burdening only Muslim inmates, or to establish that other non-Muslim inmates were in fact similarly burdened, Plaintiff's pleadings are sufficient to survive scrutiny under the Turner

analysis as well.  Accordingly, Defendant's motion with respect to Plaintiff's free exercise claim is denied.

### E.        Establishment Clause Claim

Defendant contends that Plaintiff fails to state a valid claim under the First Amendment's establishment clause because Plaintiff has not alleged facts suggesting that Defendant's policy endorsed one religion over another.  Because Plaintiff alleges facts suggesting that a unique burden was placed on Muslim inmates as compared to inmates practicing other religions, the Court finds Defendant's argument unpersuasive.

"The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another."  Larson v. Valente, 456 U.S. 228, 244 (1982).  If official preference of a particular religion has as its "principle or primary effect" to "advance or inhibit religion," establishment clause prohibitions are implicated.  Lemon v. Kurtzman, 403 U.S. 602, 613 (1971).  In such an instance, government policy or action should be treated as suspect and strict scrutiny should be applied in adjudging its constitutionality.  Larson, 456 U.S. at 246.

Here, Plaintiff sufficiently alleges that Defendant's policy significantly burdens Muslim inmates attending Ramadan religious programming, and that no such policy is applied to Catholic and Jewish inmates attending comparable religious programming.  TAC ¶¶ 11-15.  As set forth above, visual body cavity searches are highly intrusive practices that entail a "frightening and humiliating invasion" of prisoner privacy.  Way, 445 F.3d at 1160.  Plaintiff alleges that, under Defendant's policy, Plaintiff was required to either abandon the Ramadan fast and related religious programming mandated by his faith, or subject himself to the "humiliation and indignity of being stripped naked" and searched.  TAC ¶ 21.  Although strip-search practices are by no means *per se* unreasonable, Defendant's policy undoubtedly inhibited Plaintiff in the practice of his religion.  Because inmates attending comparable Catholic and Jewish programming allegedly faced no such inhibition, Plaintiff successfully alleges that Defendant's strip search policy prefers other religions over Islam.

**United States District Court**
For the Northern District of California

Because Plaintiff's allegations regarding Defendant's policy implicate Establishment Clause prohibitions, the policy must survive strict scrutiny to be upheld.  <u>Larson</u>, 456 U.S. at 246.  Based on the pleadings alone, and considering that members of other religions attending comparable programming as well as all inmates moving in the same vicinity of the prison were not subject to the search policy, there is no compelling government interest for the policy that can be inferred at this stage.

Plaintiff has successfully alleged that Defendant's policy preferred other religions over Islam, that the principle effect of the policy was to inhibit the practice of Islam, and that no compelling government interest can be inferred at this stage that justifies Defendant's Muslim only search policy.  Therefore, Defendant's motion is denied with respect to Plaintiff's claim under the establishment clause.

### F.   Equal Protection Claim

Defendant challenges Plaintiff's Fourteenth Amendment equal protection claim only on the grounds that Defendant was acting in a supervisory capacity and that Plaintiff fails to allege "personal participation between the defendant and the claimed constitutional violation."  MTD TAC at 9.  However, as set forth in section III.B. above, Plaintiff's complaint sufficiently alleges that Defendant was responsible for establishing the policy of strip searching Muslim inmates attending Ramadan related religious programming.  Accordingly, Defendant's argument is unpersuasive with relation to Plaintiff's equal protection claim, and Defendant's motion is denied.

### G.   Qualified Immunity

Defendant's final argument contends that all of Plaintiff's claims should be dismissed, regardless of individual merit, because Defendant is entitled to qualified immunity.  However, with respect to Plaintiff's First, Fourth and Fourteenth Amendment claims, the alleged constitutional violations involved clearly established rights, and therefore Defendant's argument is unpersuasive.

The defense of qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or

United States District Court
For the Northern District of California

1  constitutional rights of which a reasonable person would have known." Harlow v.

2  Fitzgerald, 457 U.S. 800, 817 (1982).  Accordingly, qualified immunity claims are examined

3  with a two-step test: "First, [the court] determine[s] whether taken in the light most favorable

4  to the party asserting the injury . . . the facts alleged show the [official]'s conduct violated a

5  constitutional right.  If a constitutional violation is present, [the court] go[es] on to ask

6  whether the right was clearly established, applying an objective but fact-specific inquiry."

7  Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007).  In considering the second

8  step–whether the constitutional right was clearly established–the Court asks whether "a

9  reasonable official would understand that what he is doing violates that right."  Mendoza v.

10  Block, 27 F.3d 1357, 1361 (9th Cir. 1994) (citing Anderson v. Creighton, 483 U.S. 635, 640

11  (1987)).  "This does not mean that any official action is protected by qualified immunity

12  unless the very action in question has previously been held unlawful, but it does require that

13  in the light of pre-existing law the unlawfulness must be apparent."  Id. (quotations omitted).

14       As set forth above, Plaintiff has successfully alleged that Defendant's search policy

15  violated Plaintiff's First, Fourth and Fourteenth Amendment rights.  The Court proceeds to

16  the second step to determine whether Plaintiff's rights were clearly established at the time of

17  violation.

18       With regard to Plaintiff's First Amendment Free Exercise claim, Plaintiff's rights

19  were clearly established when the alleged violations occurred.  It is well established that

20  visual body cavity searches are an intrusive and frightening practice.  See Way, 445 F.3d at

21  1160.  Therefore, Defendant was on notice that subjecting Plaintiff to such a practice as a

22  condition of exercising a central component of his religion substantially burdened Plaintiff in

23  the practice of his religion.  Such a burden is only acceptable if justified by legitimate

24  penological interests, and at the pleading stage, only common-sense interests will be

25  considered.  Whitmore, 298 F.3d at 1136.  When the pleadings are accepted as true and

26  reasonable inferences are drawn in Plaintiff's favor, there was no common-sense penological

27  interest that justified Defendant's search policy.  As set forth above, Plaintiff alleges that

28  similarly situated inmates and those moving through the same area of the prison were not

United States District Court
For the Northern District of California

subjected to search.  TAC ¶¶ 15-18.  Were the policy actually implemented because of safety concerns, it would have been applied evenhandedly or based on individualized reasonable suspicion–there is no common-sense explanation for singling out Muslim inmates. Accordingly, under the allegations set forth in the TAC, Defendant knew or should have known that the alleged policy was unreasonable under the First Amendment, and his claim of qualified immunity is therefore denied with regard to Plaintiff's free exercise claim.

With repect to Plaintiff's First Amendment Establishment clause claim, the analysis is similar.  The Supreme Court has recognized that government officials cannot prefer certain religions over others or single out members of a specific religion for burdensome treatment. See Larson, 456 U.S. at 244; Lemon, 403 U.S. at 613.  Plaintiff alleges that Defendant's Muslim-only policy applied a unique burden to Muslim inmates and preferred other religions by not subjecting inmates of other religions to similar burdens.  TAC ¶ 29.  Defendant was on notice that the alleged practices run afoul of the establishment clause, and no reasonable explanation justifying the unique burden is available as this stage in the proceedings. Therefore, Defendant's claim of qualified immunity with regard to Plaintiff's establishment clause claim is denied.

As for Plaintiff's Fourth Amendment claim, Plaintiff's rights were clearly established when the alleged violation occurred: It is settled law that visual body cavity strip searches of inmates are only reasonable under the Fourth Amendment if justified by a legitimate penological interest.  See Way, 445 F.3d at 1160.  At the pleading stage, the Court will only consider Defendant's common-sense justification of prison safety, and Plaintiff's allegations that similarly situated non-Muslim inmates were not subject to the policy undercuts such justification in this instance.  Accordingly, Defendant knew or reasonably should have known that the search policy violated Plaintiff's constitutional rights, and Defendant is therefore denied qualified immunity with regard to Plaintiff's Fourth Amendment claim.

Last, with respect to Plaintiff's Fourteenth Amendment equal protection claim, Plaintiff's rights were clearly established when the alleged violations occurred.  "[T]he Equal Protection Clause entitles each prisoner to a reasonable opportunity of pursuing his faith

United States District Court
For the Northern District of California

1  comparable to the opportunity afforded fellow prisoners who adhere to conventional

2  religious precepts." <u>Shakur</u>, 514 F.3d at 891 (citing <u>Cruz</u>, 405 U.S. at 322).  When prisoners

3  are subject to differential treatment based on their religious beliefs, such treatment must be

4  justified by legitimate penological interests to be upheld.  <u>Id.</u>  Defendant knew or should

5  have known that subjecting Muslim inmates to strip searches as a condition of attending

6  religious programming substantially burdened their practice of religion.  By not subjecting

7  non-Muslim inmates to the same practice, Defendant knew or should have known that he was

8  not providing Muslim inmates an equal opportunity to pursue their faith. Therefore,

9  Defendant's claim of qualified immunity is denied as to Plaintiff's Fourteenth Amendment

10  equal protection claim.

11  **IV.    CONCLUSION**

12       The Court GRANTS the Motion to Dismiss with prejudice for Plaintiff's RLUIPA

13  claim, and DENIES the Motion to Dismiss for Plaintiff's First, Fourth and Fourteenth

14  Amendment claims.

15       **IT IS SO ORDERED.**

16

17  Dated: November 19, 2013            _____
                                        CHARLES  R. BREYER
18                                      UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28